(C. D. 1041)

SNAKE KING *v.* UNITED STATES

## United States Customs Court, First Division

(Dated January 30, 1947)

*Gordon Gisbon, Esq.*, for the plaintiff, and *W. A. King* in his own behalf.
*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

OLIVER, Presiding Judge: When this case was called for trial, continuance until the next Laredo docket was granted. Counsel for the Government then moved to dismiss the protest on the ground that it was untimely and was not signed by a proper party.

The merchandise involved is covered by entry 1524–B which was liquidated on September 27, 1945.

In support of the motion, Government counsel introduced as a witness the deputy collector of customs at Brownsville, Tex., who testified that on November 26, 1945, the sixtieth day after liquidation of the involved entry, he received a telephone call from an attorney of Brownsville to the effect that the attorney wanted to file a protest in a case wherein Snake King was plaintiff. This was a few minutes after 5 p. m., at which time the office closed for the day. Shortly thereafter the attorney appeared at the collector's office, was given access, and although his attention was called to the fact that it was then 5:10 p. m., urged that the protest be accepted, stating that a letter explaining the reason for the delay would be submitted. The deputy collector received the protest and noted alongside the date stamp the time of receipt as 5:10 p. m.

The attorney subsequently submitted an affidavit explaining the delay (exhibit 2 for identification).

The deputy collector further testified that he called the attorney's attention to the fact that Pauline King, who had signed this protest, did not have a power of attorney to sign protests for the plaintiff. Certified copies of powers of attorney on customs Form 5291, executed by the firm of Snake King in favor of Pauline King, among others, were admitted in evidence (collective exhibit 1). These documents specifically except from the powers granted the power to make, sign, and file protests under section 514 of the Tariff Act of 1930.

The witness also stated that the office hours maintained for the transaction of customs business were from 8:30 a. m. to 5 p. m., as provided for in the Customs Regulations.

Section 1.8 of the Customs Regulations of 1943, as amended, reads as follows:

1.8 *Hours of business.*—(a) Except as hereinafter specified, each customs office shall be open for the transaction of general customs business between the hours

of 8:30 a. m. and 5 p. m. on all days of the year except Saturdays, Sundays, and national holidays.

As to the time within which a protest may be filed, the pertinent portion of section 514, Tariff Act of 1930, reads:

* * * all decisions of the collector * * * shall, upon the expiration of sixty days after the date of such liquidation * * * be final and conclusive upon all persons * * * unless the importer, consignee, or agent of the person paying such charge or exaction * * * shall, *within sixty days* after * * * file a protest in writing with the collector setting forth distinctly and specifically * * * the reasons for the objections thereto. [Italics added.]

We distinguish this case, upon the facts here present, from one where a party seeks to file a protest after the office of the collector has been closed for the day and access thereto has not been possible.

The regular hours of business of the office of the deputy collector at Brownsville are 8:30 a. m. to 5 p. m., as fixed by the Customs Regulations.

In *J. P. Navailles* v. *United States*, 1 Cust. Ct. 17, C. D. 5, referring to hours between which customs offices shall be open, as provided in article 1445, Customs Regulations of 1931, the court said:

We find nothing unreasonable in this regulation nor has it been pointed out that it is contrary to law, or that there arose a necessity of the public service which made it the duty of the collector to have prolonged the hours of business.

We agree that it was not "the duty of the collector to have prolonged the hours of business" and likewise are of opinion that such a regulation is not unreasonable. In the case before us, however, the attorney for plaintiff was admitted to the deputy collector's office 10 minutes after the time set by the regulations as closing time. He did file the protest with the deputy collector personally on the sixtieth calendar day after liquidation.

In the case of *Gallagher* v. *United States*, 1 Ct. Cust. Appls. 69, T. D. 31034, the owners of certain liquors entered for warehouse endeavored to make entry to withdraw the merchandise at about 5:30 p. m. on August 5, 1909, the last effective date of the Tariff Act of 1897, and tendered payment of the duties to a deputy collector present in the customhouse at that time which was refused. The official period for the transaction of general business terminated at 4:30 p. m., in accordance with the customs regulations then in effect, and the cashier, who ordinarily is the person to receive such payment, had left the office for the day and only a few entry clerks were in attendance. The appellate court, affirming the decision of the trial court, held that the deputy collector properly refused to accept the duties tendered after office hours and that the collector correctly assessed the duty under the Tariff Act of 1909, which became effective August 6.

The *Gallagher* case, *supra*, is not controlling in the case before us. The deputy collector here had not "left the office for the day" nor

had he "properly refused" to accept the protest when tendered. He did physically accept the protest and stamped it as having been received, but added a notation that it had been received "at 5:10 p.m., with office having closed at 5 p. m." This action by the deputy collector is not a refusal to accept the protest but is simply a notice to the importer that its acceptance was subject to whatever consequences might flow from the fact that it was filed 10 minutes after the closing time set by the regulations. Such presentation and qualified acceptance of the protest was a substantial compliance with section 514 of the Tariff Act of 1930, and the protest is therefore timely.

Defendant advances as the second ground for the dismissal of the protest herein the failure of the plaintiff to comply with regulations promulgated by the Secretary of the Treasury instructing collectors of customs to reject protests filed by an agent unless power of attorney authorizing such agent or attorney to act has been filed with such collectors. Powers of attorney called for are of two kinds. Section 8.19 (a) of the Customs Regulations of 1943 provides, in part, as follows:

A power of attorney may be executed for the transaction of a specified part or for all the customs business of the principal, except that a separate power of attorney on customs Form 5295 or 5295–A shall be required for filing protests.

A footnote to the foregoing sentence refers to section 17.2 (a), which provides, in part, as follows:

No protest signed by an agent or attorney shall be granted or denied by the collector unless there has been filed, or is filed with the protest, in the collector's office a power of attorney on customs Form 5295 or 5295–A.

We are thus faced with the question of whether this plaintiff, by reason of the foregoing regulations, was required to execute another or additional power of attorney in favor of Pauline King on customs Form 5295 or 5295–A. This compels a consideration of the right of the Secretary of the Treasury to make and promulgate the foregoing regulations requiring the signing and filing of a separate power of attorney for the purpose of enabling an importer or consignee to file protests under section 514 through an agent or attorney. The Secretary of the Treasury, by the regulations hereinabove quoted, has sought to establish the particular manner in which protests may be filed on behalf of the persons named in the statute.

Section 624 of the Tariff Act of 1930 provides that in addition to the specific powers conferred by the act, the Secretary of the Treasury is authorized to make such rules and regulations as may be necessary to carry out the provisions of this act. It has been held, however, that regulations made by the Secretary of the Treasury under such

authority are merely for the convenient administration of the customs laws by the Treasury Department and are not limitations upon the statutory rights of importers. *M. Grieve & Co.* v. *United States*, 65 Treas. Dec. 228, T. D. 46895. This court has frequently held that such regulations are contrary to the right granted by Congress for a review of official action in sections 514 and 515 of the Tariff Act of 1930. *Lloyd* v. *United States*, 6 Cust. Ct. 421, C. D. 507; *Rhodes Bros.* v. *United States*, 7 Cust. Ct. 33, C. D. 528; and *A. Grove Knutsen* v. *United States*, 10 Cust. Ct. 326, C. D. 776. In the last case, the court, in denying a motion to dismiss the protest, stated that "the Treasury regulations authorizing collectors to reject protests when the person filing the same is not authorized by power of attorney on file with the collector to file such protests, are without authority of law." We are in accord with that view.

In view of the holding that the requirement in section 17.2 (*a*) of the Customs Regulations of a separate power of attorney to enable an agent to file a protest for his principal is invalid, it follows that the provision of section 8.19 (*a*) excluding such power from the general power of attorney is likewise invalid, and, to that extent at least, the powers of attorney represented by collective exhibit 1 herein are not binding upon the plaintiff.

Inasmuch as the protest herein was filed within the prescribed time by a party properly authorized to do so, the motion to dismiss is denied, and the case is continued to the next Laredo docket for hearing upon the merits.